UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS A. CASTELLANOS,<br><br>Plaintiff,<br><br>v.<br><br>HARDER MECHANICAL CONTRACTORS,<br><br>Defendant. | Case No. 1:23-cv-01639-NODJ-CDB<br><br>**SCREENING ORDER**<br><br>**ORDER REQUIRING PLAINTIFF TO FILE LONG FORM APPLICATION TO PROCEED *IN FORMA PAUPERIS***<br><br>(Docs. 1-2)<br><br>**AMENDED COMPLAINT DUE: FEBRUARY 9, 2024** |

This matter is before the court on a screening of Plaintiff Luis A. Castellanos' ("Plaintiff" or "Castellanos") Complaint. (Doc. 1). Castellanos, who is proceeding pro se in this matter, did not pay the filing fee and instead filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 2).

In his Complaint, Plaintiff alleges that Defendant Harder Mechanical Contractors ("Harder") unjustly fired him for having cooperated in a complaint process for disability discrimination. The Court has screened the complaint and finds that Plaintiff has not pled sufficient facts to state a cognizable claim upon which relief may be granted.

In addition, the Court has reviewed Plaintiff's application to proceed *in forma pauperis* and requires that Plaintiff submit additional financial information before allowing him to proceed without prepayment of the filing fee.

**I.  Screening Requirement**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct an initial review of a pro se

complaint proceeding *in forma pauperis* and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); *Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) (affirming s*ua sponte* dismissal for failure to state a claim).  If the Court determines that a complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of that the plaintiff's claims are and the grounds upon which they rest.  *See e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

In reviewing a pro se complaint, a court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, although a court accepts as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  *Iqbal*, 556 U.S. at 678.

"[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between the possibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**II.  Plaintiff's Complaint Fails to State a Claim**

      **A.  Plaintiff's Allegations**

Castellanos' factual pleadings are contained in an attachment to the Complaint titled "Timeline of Events." (Doc. 1 p. 10).[1] Castellanos alleges that he and a co-worker named Sergio Alvarez ("Sergio") began working at the Bakersfield Renewable Fuels ("BKRF") refinery on November 8, 2021. Sergio worked as a foreman and Castellanos worked as a steward. Their general foreman was Brian Colombo ("Colombo"). During this time, Sergio and Castellanos worked primarily in the laydown yard identifying and sorting iron pieces that would be used to assemble certain structures. *Id.* The Complaint avers that Colombo notified Sergio and Castellanos that once additional ironworkers were hired, Sergio would become a unit foreman, and Castellanos would be elevated to foreman of the laydown yard. *Id.*

On November 18, 2021, at around 2:30 p.m., Sergio and Castellanos were working on the reactor unit. (Doc. 1 p. 9). This work involved identifying and removing incorrect components and replacing them with the right ones. *Id.* Castellanos and Sergio were both working near each other, and the work that they were doing required the use of tools such as wrenches, wedges, and sledgehammers. *Id.* While Castellanos was swinging a sledgehammer at a wedge, Colombo purportedly snapped and began yelling at Sergio about his physical appearance. *Id.* Colombo asked Alvarez if there was something wrong with his arms and why he was not helping Castellanos. (Doc. 1 p. 9). Colombo demanded Alvarez to explain why it looked like he favored one arm. Colombo allegedly warned Alvarez that he better not be a "one-armed motherfucker" because he had "no use for a one-armed motherfucker at this jobsite." *Id.*[2]

Following this incident, Castellanos initiated a complaint process and provided a witness

---

[1] The Court uses herein the CM/ECF-assigned pagination displayed in the header of the Complaint.

[2] These factual allegations reference a statement signed by Sergio Alvarez.

3

1   statement regarding this incident to Harder.  (Doc. 1 p. 10).  Ronnie Pearce, an onsite
2   superintendent for Harder, asked Castellanos if he had a problem with Colombo.  *Id*.  According
3   to the complaint, Sergio was instructed to wait in the conference room while Colombo and
4   Castellanos worked alone for the remainder of the day.  *Id*.

5         At some point, as Colombo and Castellanos were in a truck on their way to the work area,
6   Colombo confronted Castellanos about the complaint and denied ever making inappropriate
7   statements to Alvarez.  *Id*.  Colombo accused Castellanos and Alvarez of making up the whole
8   story and lectured them about the serious allegations, including that he could possibly get fired.
9   *Id*.

10        During this confrontation, Colombo allegedly confessed and began belittling Castellanos
11  by saying that "[t]elling on another ironworker is bitch shit. We don't snitch on each other."
12  (Doc. 1 p. 11).  Colombo also allegedly told Castellanos "[w]hat the fuck is wrong with you two?
13  Your [sic] just a bunch of fuckin' cry babies." *Id*.  Castellanos retorted and said: "What the is
14  [sic] fuck is wrong with me? What the fuck is wrong with you? You were the coordinator of an
15  apprenticeship! How would you not know better than to talk to people that way?" *Id*.

16        The Complaint alleges that Sergio's last day on the refinery was on November 22, 2021.
17  *Id*.  Sergio initiated a grievance with their labor union against Harder.  Alvarez asked Castellanos
18  to provide a witness summary statement for his records, and Castellanos provided one.  (Doc. 1 p.
19  11).  Castellanos was promoted to foreman of the laydown yard on November 29, 2021. *Id*.
20  However, for the remainder of his time at the BKRF refinery (approximately five weeks),
21  Plaintiff reported that Harder's management, Ronnie Pearce, and other employees had drastically
22  changed their behavior towards him.  *Id*.

23        Castellanos alleges that his previously warm interactions with Harder's management
24  turned cold, and he would not be greeted or spoken to unless he initiated the interactions.  *Id*.
25  Over those five weeks, Colombo attempted numerous times to discourage Castellanos from
26  cooperating in the complaint against him. *Id*.  Colombo would repeatedly call Castellanos to go
27  over structure drawings but ended up talking about Sergio instead.  (Doc. 1 p. 11).
28        Colombo would repeatedly compliment Castellanos in public and would talk about how

4

he had good connections at Harder.  (Doc 1 p. 12).  Castellanos suspected that Colombo's praise had ulterior motives:  while Colombo would remind Castellanos that he was a good employee, he would also say that Castellanos' opportunities for advancement depended on whether or not he was viewed as a problem employee. *Id*.  Castellanos was suspicious of Colombo and would share his concerns with Manuel Alvarez ("Manuel"). *Id*.

During the week leading up to Christmas, Castellanos confronted Colombo about his insinuations. *Id*.  Colombo allegedly told him "[w]ell, there is that thing with Sergio.  You know that could cause a lot of problem for people."  *Id*.  Castellanos reminded Colombo about Harder's zero tolerance policy towards harassment and discrimination, and how employees had a duty to come forward to report incidents.  The meeting abruptly ended.  *Id*.

On the following day, Colombo told Castellanos that he would no longer be needed at the mandatory meeting held by Harder's management, despite all other general foremen being required to attend these meetings.  (Doc. 1 p. 12).  Thereafter, on December 28, 2021, Castellanos alleges that he lost his job with Harder. (Doc. 1 p. 13).  He alleges that the reason for his termination notice was for a "reduction of force" but thought that was peculiar since Harder allegedly hired three additional union iron workers just the day prior to his termination. Id.

**B. Discussion**

Castellanos raises claims for "discrimination based on disability" and "reprisal for cooperating in complaint process[.]" (Doc. 1 p. 4).  He further states that he believes that his firing was a retaliatory reprisal after he cooperated with Sergio by providing a witness statement against Colombo. *Id*. at 5.  Thus, liberally construed, the Court perceives Castellanos attempts to state a retaliation claim pursuant to the American with Disabilities Act ("ADA") based on his cooperation with Sergio in connection with his complaint over Colombo's "one-armed motherfucker" comments.

In order to state an ADA retaliation claim, a plaintiff must allege that (a) he engaged in a protected activity; (b) he suffered a materially adverse employment action; and (c) there exists a causal connection between the protected activity and the adverse employment action. *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003).  Employers may not retaliate against an

1  employee because he has "opposed any act or practice" made unlawful by the ADA.  *See* 42
2  U.S.C. § 12203(a); *see also Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir.
3  2004) ("[p]ursuing one's rights under the ADA constitutes a protected activity").  The Ninth
4  Circuit has adopted the Equal Employment Opportunity Commission ("EEOC") definition of
5  "adverse employment action," finding that it constitutes any act "reasonably likely to deter
6  employees from engaging in protected activity." *Id*. at 850 (quoting *Ray v. Henderson*, 217 F.3d
7  1234, 1243 (9th Cir. 2000)); *Pham v. Las Vegas Superstore, Inc*., 2015 WL 1906345, at 3 (D.
8  Nev. Mar. 12, 2015).

9  In this case, Castellanos alleges that he was unjustly fired by Harder for having cooperated
10 and provided witness testimony against Colombo in connection with Sergio's complaint. (Doc. 1
11 p. 5).  A Plaintiff's retaliation claims under the ADA (or the Rehabilitation Act) are not
12 foreclosed on grounds that a plaintiff fails to allege a specific disability.  *See Coons v. Secretary*
13 *of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) ("Even though [plaintiff] is not
14 disabled under the Rehabilitation Act, we must still address [his] retaliation claim."); *Amenson v.*
15 *Vacaville Unified School District*, No. 2:20-cv-00901-MCE-DB, 2021 WL 3602151, at *6 n.5
16 (E.D. Cal. Aug. 13, 2021) (citing *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1264
17 (10th Cir. 2001) (holding that plaintiff needed to show only that she had a "reasonable, good faith
18 belief that the statute has been violated.")).

19 At this preliminary screening level, and liberally construing Castellanos' complaint, the
20 Court is unable to determine from the pleadings whether Castellanos plausibly alleged that he had
21 a reasonable, good faith belief that Colombo engaged in disability-based discrimination against
22 Sergio.  Although a statement drafted by Sergio describes the underlying incident, it is unclear
23 from Castellanos' Complaint whether Sergio ultimately filed a complaint alleging disability
24 discrimination based on Colombo derisively calling him a "one-armed motherfucker" or whether
25 Sergio's complaint, and Castellanos' support for the same, refer to other unacceptable, but non-
26 disability based discriminatory conduct. (Doc 1 p. 9).

27 As for the other elements of a prima facie claim for retaliation, Castellanos properly
28 alleges that he suffered materially adverse employment actions.  For example, Castellanos alleges

6

he was told that his advancement opportunities at Harder would be jeopardized if he was viewed as a "problem employee." (Doc. 1 p. 12). Castellanos further alleges that he specifically asked Colombo whether he was a "problem employee," to which Colombo replied, "Well, there is that thing with Sergio. You know that could cause a lot of problem for people." *Id*. The Complaint also alleges that after he assisted with Sergio's complaint, Castellanos was excluded from mandatory work meetings and was ultimately terminated by Harder on December 28, 2021. *Id*. at 12-13

Finally, it may be inferred from Castellanos' Complaint that Harder acted with retaliatory intent when it terminated him on December 28, 2021. First, according to the Complaint, Castellanos was told by Colombo that he was a sharp, organized, good worker and well spoken but that he could have been a "problem worker." (Doc. 1 p. 12). Likewise, Castellanos was terminated roughly a month after the November 18, 2021, incident. "When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred." *Pardi*, 389 F.3d at 850 (citing *Bell v. Clackamas County*, 341 F.3d 858, 865-66 (9th Cir. 2003)). Moreover, Castellanos alleges that although Harder listed "reduction of force" for the reason behind terminating him (Doc. 1 p. 15), other ironworkers were hired just the day before his termination. *Id*. at 13. Castellanos attached a signed statement from Manuel who opines that he was fired at the behest of Colombo after cooperating with Sergio. *Id*. at 14. Manuel alleges that Colombo even broke a company vehicle window to retrieve some of Castellanos' belongings that were locked inside because he wanted him off the property so badly.

In the light of the forgoing, the Court will grant Castellanos leave to amend his ADA retaliation claim and correct the deficiencies identified above by the Court. Specifically, Castellanos must plausibly allege that he had a reasonable, good faith belief that Colombo engaged in disability-based discrimination against Sergio based on, for instance, Sergio's filing of a complaint against Colombo alleging disability discrimination.

If Castellanos elects to proceed in this action by filing an amended complaint, he is advised that the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* Local Rule 220. The amended complaint must be complete in itself without

reference to the prior or superseded pleading. Once the amended complaint is filed, the original pleading no longer serves any function in the case, thus in the amended complaint, Plaintiff must re-plead all elements of his ADA retaliation claim, even the ones that the Court deemed sufficiently pleaded at screening.

## II. *In Forma Pauperis* Application

Turning to Castellanos' application to proceed *in forma pauperis*, the Court finds that his application demonstrates that his income and resources are above the poverty threshold, and the information provided is insufficient for the Court to determine whether he is entitled to proceed without prepayment of fees in this action.

While a plaintiff seeking benefits of the *in forma pauperis* statute does not need to be "absolutely destitute," he must allege poverty "with some particularity, definiteness and certainty." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)). Although Plaintiff has provided some evidence that he is experiencing financial strain such as his unemployment, expected cessation of work wages, and state disability, the application also lists a bank account with $3,350.00 in funds, as well as assets like a home valued at $280,000 and four automobiles.

The application also lists that Plaintiff has a spouse and three dependent children, and "100% of income goes to support my household – all those listed here." (Doc. 2. p. 2). The Court is unable to determine whether Plaintiff should be allowed to proceed without prepayment of fees without having a clearer record of what Plaintiff's income and expenditures. Thus, Plaintiff is directed to complete a long form *in forma pauperis* application if he wishes to proceed without prepayment of fees.

## III. Conclusion

Accordingly, the Court will order Plaintiff to complete and file an Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)—AO 239. If Plaintiff is unwilling to complete and submit the long form application, Plaintiff must pay the filing fee in full.

Based upon the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk of the Court is directed to forward to Plaintiff an Application to Proceed

in District Court Without Prepaying Fees or Costs (Long Form)—AO 239;

2. No later than February 9, 2024, Plaintiff shall either (1) pay the $405.00 filing fee for this action, or (2) complete and file the enclosed Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)—AO 239;

3. No later than February 9, 2024, Plaintiff shall file either a first amended complaint if he believes he can correct the deficiencies noted above, or a notice of voluntary dismissal.  Any amended complaint must be a complete document in and of itself and will supersede the original complaint in its entirety.  Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the Court;

4. Plaintiff shall clearly title the amended complaint by placing the words "FIRST AMENDED COMPLAINT" on page 1 in the caption; and

5. If Plaintiff fails to comply with this order, the undersigned shall recommend that this action be dismissed.

IT IS SO ORDERED.

Dated:   **January 19, 2024**

UNITED STATES MAGISTRATE JUDGE